WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Armando Virgen, | No. CV-13-1294-TUC-DTF |
| Petitioner, | **ORDER** |
| v. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

Petitioner Jose Virgen, presently incarcerated at the Arizona State Prison-Lewis, Buckley Unit, in Buckeye, Arizona, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Before the Court are the Amended Petition (Doc. 13) and Respondents' Answer (Doc. 23). Petitioner also twice has filed a substantively-identical document captioned "Motion to Inform Courts that Count One and Count Four were Presented to the Court of Appeal and Arizona Supreme Court and First and Second Petition are Together." (Docs. 21, 24.) The Court treats this second filing as Virgen's reply brief. The parties have consented to Magistrate Judge jurisdiction. (Doc. 20.)

## FACTUAL AND PROCEDURAL BACKGROUND

Virgen was convicted in the Superior Court of Pima County of attempted burglary and attempted aggravated assault with a deadly weapon. (Doc. 23, Ex. B.) On November

16, 2009, he was sentenced to two 10-year prison terms to be served concurrently. (*Id*. at 2.)

The convictions were based on the following facts, as summarized by the appellate court:

> In the early morning hours of March 23, 2008, R. heard a car pull into his driveway and a noise at the gate to his backyard. He looked out a sliding glass door and saw a man he subsequently identified as Virgen, who pointed a shotgun at R.'s face. R. "ducked down," moved into the kitchen, and called 9-1-1. R. saw Virgen get into the passenger side of a car that had been idling in the driveway.
>
> About an hour later, a Tucson police officer noticed a car stuck on a curb and stopped to help. Virgen, along with two others, was standing beside the car. As the officer spoke to Virgen and the others, he saw "what appeared to be a sawed-off shotgun . . . in the vehicle in plain view." The officer secured the weapon, which was unloaded, and detained Virgen. Meanwhile, officers had arrived at R.'s home in response to the 9-1-1 call. One of the officers took R. to where Virgen and the others were being detained, and R. identified Virgen as the man who had been in his yard.

(Doc. 23, Ex. G at 2.)

Virgen filed an appeal, and the Arizona Court of Appeals affirmed his convictions and sentences. (*Id*., Exs. D, G.) Virgen's request for review in the Arizona Supreme Court was denied. (*Id*., Exs. H, I.) Virgen filed a Petition for Post-conviction Relief (PCR). (*Id*., Ex. M.) After an evidentiary hearing, the PCR court denied relief. (*Id*., Exs. S, T, 6, 7.) Virgen sought and was granted review of the PCR denial in the Arizona Court of Appeals, but relief was denied. (*Id*., Exs. V, W, X.) Virgen did not seek review in the Arizona Supreme Court. (*Id*., Ex. Y.) The Arizona Court of Appeals issued its mandate on May 14, 2013. (*Id*.)

1
2

**DISCUSSION**

3

4

5

6

7

Virgen raises four claims in his Petition. Respondent does not contest the timeliness of the Petition but contends Claim 1 is procedurally defaulted, and Claims 2 and 4 are not cognizable. The Court will first examine exhaustion, then cognizability, and then will address the merits of any remaining claims.

8

**PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT**

9

10

11

12

13

14

15

16

17

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).

18

19

20

21

22

23

24

25

26

27

28

In Arizona, there are two primary procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally

barred." *Coleman*, 501 U.S. at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1; *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

**ANALYSIS OF PROCEDURAL DEFAULT OF CLAIM 1**

Virgen alleges numerous legal errors and constitutional violations within this claim. He states, in part, "malicious conviction, miscarriage of justice, plain error, structural error, fundamental error, judicial misconduct, prosecutorial misconduct and vindictiveness." (Doc. 13 at 6.) The Court, therefore, looks to the facts he alleges to determine the actual claim asserted.[1] The factual premise of the claim appears to be that

---

[1] Virgen also asserts that the court, prosecutor and counsel were biased, but he provides no factual support for that allegation. (Doc. 13 at 6.)

the prosecutor obtained a superseding indictment 20 days before trial, which prevented Virgen from having enough time to prepare for trial. Further, the court did not take action to remedy the late change to the indictment, such as dismissing the charges or granting a trial continuance. Virgen argues the late indictment violated his rights under the Sixth Amendment.

Virgen concedes in the Petition that he did not present these claims to the Arizona Court of Appeals because counsel did not want to raise them. (Doc. 1 at 6.) In his reply, Virgen states that he raised this claim in state court but the court ruled only on the documents filed by Virgen's appointed counsel. (Doc. 21.)

Review of Virgen's opening appeal brief and PCR petition reveals that this claim was not raised in those proceedings by Virgen's appointed counsel. Virgen unsuccessfully attempted to raise some issues pro se. He submitted filings directly to the Arizona Court of Appeals in June and August 2013, after the mandate had issued on his petition for review. (Doc. 13, Exs. 12, 13.) On the August 2013 document, someone wrote, "case mandated 5/13/13 no longer pending in this court." In November 2013, the Arizona Supreme Court issued an order in response to a pro se filing by Virgen. (*Id.*, Ex. 11.) The supreme court denied his requests to file a delayed appeal, for reconsideration and a stay pending appeal and sent him a copy of the court of appeals December 12, 2012 decision, which Virgen had asserted he had never received. (*Id.*)

Review of the record reveals that Claim 1 was not fairly presented in a procedurally proper manner to the court of appeals by counsel or Virgen himself. If

Virgen were to return to state court now to litigate Claim 1, it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Therefore, this claim is technically exhausted but procedurally defaulted.

Virgen asserts this claim was not raised due to the fault of counsel.   Claim 1 is a record-based claim that should have been raised, if at all, on direct appeal. Therefore, to the extent this claim is viable, it is appellate counsel that should have raised it in state court. Ineffective assistance of appellate counsel that violates the Sixth Amendment can serve as cause for a petitioner's failure to properly exhaust claims in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, before ineffectiveness of appellate counsel may be used to establish cause for a procedural default, it must be presented to the state court as an independent claim. *Id.* at 489. Petitioner did not allege in his PCR petition that appellate counsel was ineffective for failing to raise any claims. (Doc. 13, Ex. X.) However, because he was represented by the same counsel on appeal and in his first PCR proceeding, it would have been improper for that counsel to allege his own ineffectiveness. *See State v. Bennett*, 146 P.3d 63, 67, 213 Ariz. 562, 566 (2006). Therefore, it is not clear that this claim would be precluded if raised in a subsequent PCR petition. *Id.* Because this could operate as cause if exhausted, the Court will assess the merit of Claim 1 to determine if Petitioner was prejudiced by counsel's failure to raise it on appeal.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On the first morning of trial, the Court had a discussion with the prosecutor and defense counsel about the indictment. The prosecutor indicated that she had amended the indictment in light of the defense expert's opinion regarding the inoperability of the weapon. (Doc. 23, Ex. 1 at 6.) She asserted that the other evidence had not changed and defense counsel had agreed they did not need to continue the trial. (*Id.* at 6-7.) Virgen makes a conclusory assertion that he did not have time to prepare but does not identify anything he was unable to do because of the limited time between the indictment and trial, or what he would have done with more time. Defense counsel never asserted before or at trial, that the defense had been unable to prepare for trial due to the new indictment. Therefore, there is no factual foundation for this claim that proceeding on a superseding indictment obtained 20 days before trial inhibited the defense's ability to prepare for trial.

Virgen also alleges, within Claim 1, that the indictment was vague. However, in explaining this allegation Virgen does not actually contend the language of the indictment was unclear. Rather, he appears to suggest the trial evidence did not match up with the attempt crimes charged in the indictment. Virgen does not explain how this would violate federal law. Further, in finding him guilty, the jury found that the trial evidence proved the charges contained in the indictment.

In sum, Claim 1 is without merit. Therefore, appellate counsel was not ineffective for failing to raise this claim. Virgen has not demonstrated actual prejudice arising from the procedural default of Claim 1. Therefore, it is procedurally defaulted and subject to

- 7 -

dismissal on that ground. Alternatively, regardless of exhaustion, this claim is meritless and may be dismissed on that basis. *See* 28 U.S.C. § 2254(b)(2).

**COGNIZABILITY OF CLAIMS 2 AND 4**

**Claim 2**

Virgen alleges "permanently inoperable weapon," and then as factual support he argues that he is innocent and was framed. First, relief in this Court is available for a person convicted in state court only if the person is in custody in violation of the federal constitution or a law of the United States. 28 U.S.C. § 2241(c)(3). Virgen has not alleged a violation of federal law in Claim 2 nor did he cite any law illuminating a federal issue. [2]

Second, in state court Virgen alleged a version of this claim solely as a state-law claim supported by state caselaw. (Doc. 23, Ex. D at 6-7.) The one state case cited in the appellate brief does not plainly analyze a relevant federal constitutional issue. (*Id.*, citing *State v. Spears*, 908 P.2d 1062, 184 Ariz. 277 (1996).) Virgen failed to fairly present this claim in state court as one asserting a federal constitutional issue. Therefore, even if the claim was sufficiently federalized in this Court, it was not properly exhausted and would be procedurally defaulted.

---

[2] Virgen contends he was not guilty of the crimes because the firearm was permanently inoperable. The jury was instructed that a person commits attempt if he "intentionally engages in conduct which would constitute an offense if the attendant circumstances were as such person believes them to be." (Doc. 23, Ex. 4 at 10.) The prosecution's theory was that Virgen believed the firearm was not permanently inoperable and, if that was true, his conduct would have constituted completed offenses. Therefore, he was guilty of attempts. The appellate court concluded there was sufficient evidence presented at trial to support this theory. (Doc. 23, Ex. G at 3-5.) To the extent Claim 2 could be construed as a federal claim of insufficient evidence, the Court has reviewed the trial transcripts and finds that a rational trier of fact could have found the elements of both crimes beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

- 8 -

**Claim 4**

Virgen alleges PCR counsel was ineffective.[3] Ineffectiveness of counsel on a state post-conviction proceeding is not a ground for relief in a habeas case pursuant to § 2254. *See* 28 U.S.C. § 2254(i).

## LEGAL STANDARDS FOR RELIEF UNDER THE AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reducing delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*,  537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[3] Virgen alleges within the discussion of Claim 4 that he was merely present and committed no crime and, therefore, is actually innocent. Although Virgen has maintained throughout that he was not guilty due to the inoperability of the gun, this is the first time the Court has seen an argument of mere presence. Virgen has not raised or exhausted this argument as an independent claim and it is contrary to his trial testimony.

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The last relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold test under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but

1
2
3

reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3,

8 (2002) (per curiam).

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas

court may grant relief where a state court "identifies the correct governing legal rule from

[the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . .

case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a

new context where it should not apply or unreasonably refuses to extend the principle to a

new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find

a state court's application of Supreme Court precedent "unreasonable," the petitioner

must show that the state court's decision was not merely incorrect or erroneous, but

"objectively unreasonable." *Id.* at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at

25. "A state court's determination that a claim lacks merit precludes federal habeas relief

so long as '"fairminded jurists could disagree' on the correctness of the state court's

decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v.*

*Alvarado*, 541 U.S. 652, 664 (2004)).

21
22
23
24
25
26
27
28

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the

state court decision was based on an unreasonable determination of the facts. *Miller-El v.*

*Dretke*, 545 U.S. 231, 240 (2005) (Miller-El II). A state court decision "based on a

factual determination will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*

*v. Cockrell*, 537 U.S. 322, 340 (2003) (Miller-El I); *see Taylor v. Maddox*, 366 F.3d 992,

- 11 -

999 (9th Cir. 2004). In considering a challenge under § 2254(d)(2), state court factual

determinations are presumed to be correct, and a petitioner bears the "burden of rebutting

this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*,

550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

**ANALYSIS OF MERITS OF CLAIM 3**

Within Claim 3, Virgen alleges two claims related to trial counsel. In subclaim (a),

he contends the trial court violated his right to competent counsel and a fair trial by

denying him a change of counsel. In subclaim (b), he alleges counsel was ineffective for

telling him to testify at trial.[4]

**Claim 3(a)**

Virgen alleges the trial court was aware that communication and the relationship

between him and his counsel had broken down before trial, yet the judge denied his

request for new counsel.

The trial court appointed Virgen counsel at his arraignment. (Doc. 23, Ex. Z.)

Several weeks later, the court denied Virgen's request for new counsel due to conflicts.

(*Id.*, Ex. AA.) A few months later, the Court granted Virgen's second request to remove

his attorney and appoint new counsel. (*Id.*, Exs. BB, CC.) Within a month, Virgen moved

---

[4] Virgen also asserts that counsel tried to force him to take a plea deal. Virgen did not enter a plea and he does not allege any prejudice arising from this alleged deficiency by counsel. Further, this claim was not exhausted and would be procedurally defaulted. *See Carriger v. Lewis*, 971 F.2d 329, 333-34 (9th Cir. 1992) (treating distinct failures by trial counsel as separate claims for exhaustion and procedural default). Additionally, Virgen makes a vague reference to a violation of his Fifth Amendment right not to incriminate himself. No such claim was exhausted in state court and it would be procedurally defaulted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to have counsel removed because she tried to force him to sign a plea deal, talked to him disrespectfully and told him he was a criminal, he did not trust her, and she was not investigating his case. (*Id.*, Ex. DD.) The court denied that request. (*Id.*, Ex. EE.) The following month counsel moved to withdraw because Virgen filed a bar complaint against her. (*Id.*, Ex. FF.) That request was denied. (*Id.*, Ex. GG.) Virgen again twice sought new counsel sighting a breakdown in communication, that counsel was not investigating the case, and she was conspiring with the prosecutor. (*Id.*, Exs. HH, II.) Those motions were denied after oral argument. (*Id.*, Ex. JJ.) Post-trial, the court removed counsel after finding that she filed a perfunctory motion for new trial.

Virgen raised Claim 3(a) on direct appeal. The court of appeals acknowledged Virgen's complaints about counsel. (Doc. 23, Ex. G at 10.) However, the court found that these complaints were nothing more than "disagreement over appropriate defense strategies" or "feelings of not getting along so well together." (*Id.* at 11.) Thus, the court found these problems between Virgen and trial counsel were nothing more than "friction" until after trial. (Doc. 23, Ex. G at 10-11.) Overall, the appellate court found there was no error by the trial judge in denying Virgen's requests for new counsel.

Virgen fails to substantiate the allegation that he and counsel had an actual conflict of interest. This is not a situation in which counsel represented another defendant with a conflicting defense, *see Cuyler v. Sullivan*, 446 U.S. 335 (1980), or otherwise had an adverse interest, *see Frazer v. United States*, 18 F.3d 778, 782-83 (9th Cir. 1994) (noting an actual conflict if counsel acts upon belief that his client should be convicted). The only

1
2
3
4
5
6
7

assertion of a conflicting interest is the fact that Virgen filed a bar complaint against counsel. The Supreme Court has never held that an adversarial relationship as to a separate proceeding amounts to a conflict of interest requiring a new trial.[5] *See United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993) (noting that counsel would not be advantaged in a disciplinary proceeding by performing below his best ability at trial).

8
9
10
11
12
13
14
15
16
17

Virgen's other assertion is that he had a breakdown of communication with counsel. The Supreme Court holds there is no Sixth Amendment right to a "meaningful relationship" between counsel and defendant. *Morris v. Slappy*, 461 U.S. 1, 14 (1983). No Supreme Court case has held that a defendant is entitled to new counsel because of lack of communication or disagreement over strategic decisions. *Larson v. Palmateer*, 515 F.3d 1057, 1066-67 (9th Cir. 2008). Because there is no clearly established federal law on point, the state court could not unreasonably apply federal law in denying this claim. *Musladin*, 549 U.S. at 77.

18
19

**Claim 3(b)**

20
21
22
23
24
25

Virgen alleges counsel was ineffective in requiring him to take the stand. The PCR court held a hearing on this claim, although it was articulated slightly differently – whether calling Virgen to testify was necessary to establish the defense asserted by counsel. The PCR court found counsel's decision was one of trial strategy. (Doc. 23, Ex. T at 3.) The court further held:

26
27
28

---

[5] As the Arizona Supreme Court has pointed out, the filing of a bar complaint cannot in itself necessitate the appointment of new counsel because a defendant could repeatedly delay proceedings by such filings. *See State v. Henry*, 944 P.2d 57, 64, 189 Ariz. 542, 549 (1997).

1

2

3

4

5

6

7

8

> While a stipulation to the permanent inoperability of the firearm was entered, the State nevertheless withstood a Rule 20 motion with respect to attempted aggravated assault. The Prosecutor argued that "if the defendant believes the attendant circumstances are as he believes them to be, and does something, that would be an offense if he believes that," it was a BB gun or a firearm that was not in fact permanently inoperable. . . . Ms. Altschuler's trial strategy with respect to the Petitioner's testimony concerned refuting the intent element of the crime of aggravated assault. The Petitioner's testimony therefore remained necessary to refute the intent element of attempted aggravated assault, and was consistent with the stated trial strategy.

9

10

11

12

(*Id.* at 5-6.) The court concluded it was not below an objective standard of reasonableness "to have the defendant testify in order to challenge the element of aggravated assault, which required that the Petitioner 'knowingly' possessed a deadly weapon." (*Id.*)

13

14

15

16

17

18

19

20

The PCR court further found that Virgen was not prejudiced by counsel's actions regarding his testimony. (*Id.* at 6.) The court noted that Virgen argued the prejudice arose from discrepancies between his testimony and that of other witnesses but he failed to identify any discrepancies. (*Id.*) Because the defense strategy focused on Virgen's state of mind, the Court found no evidence that the result of the proceedings would have been different if he had not testified. (*Id.*)

21

Ineffective Assistance of Counsel Standard

22

23

24

25

26

Ineffective assistance of counsel (IAC) claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687-88.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland's* first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Petitioner bears the burden of showing the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Discussion

First, the Court reviews the state courts' factual finding that trial counsel made a strategic decision and assesses whether that finding was objectively unreasonable. *See Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing 28 U.S.C. § 2254(d)(2)). Counsel

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

testified at an evidentiary hearing that she made a strategic choice for Virgen to testify. (Doc. 23, Ex. 7 at 14-16, 35-36.) There is no evidence to the contrary. Therefore, the evidence supports the state courts' finding that counsel made a strategic decision about the defense to pursue at trial.

Next, the Court must review the objective reasonableness of the state courts' ruling that counsel's strategic decision fell within reasonable professional judgment under *Strickland*. *See Wood*, 558 U.S. at 302-03 & n.3. Virgen has presented no evidence that counsel's decision was unreasonable, no opinion from another attorney or prevailing norms from attorney guidelines. *See Matylinsky v. Budge*, 577 F.3d 1083, 1092 (9th Cir. 2009) (finding that defendant presented no evidence of unreasonableness that could satisfy "heavy burden" of proving that trial strategy was deficient). Having reviewed the entirety of trial and the PCR court's evidentiary hearing, it was reasonable for counsel to recommend that Virgen testify. Even if counsel could have defended the case without Virgen's testimony, it was not below the standard of reasonableness to rely on his testimony.

In his Petition before this Court, Virgen does not allege any prejudice arising from his testimony at trial. He merely states that he did not want to testify and counsel told him to take the stand. This fails to establish actual prejudice. Even in state court, Virgen failed to substantiate his assertion that his testimony was in conflict with that of other witnesses. Virgen fails to establish either prong of *Strickland*. It was not objectively unreasonable for the state courts to deny Claim 3(b).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court briefly addresses a related issue. Respondents read Claim 3(b) as alleging that counsel was ineffective for failing to advise Virgen that his prior convictions would be admissible if he testified. Although this claim was raised and denied during PCR proceedings, Virgen did not make any mention of the admissibility of his priors in his Petition before this Court. Even if the Court construed the Petition as raising this claim, it is without merit. On the first day of trial, the prosecutor noted that the State would sanitize Virgen's prior convictions for admission if Virgen chose to testify. (Doc. 23, Ex. 1 at 13.)  The following exchange then took place:

> THE COURT: Okay. We can sanitize them. What happens, sir, if you testify, which is your right, if you do testify, you don't have to if you don't want to, for the record, the probative value outweighs any prejudice the jury will learn about prior convictions but not what they're for. They'll learn hypothetically you have a prior conviction on X date, not a conviction for burglary, assault, whatever, just a conviction. That's called sanitizing prior convictions.

> MS. ALTSCHULER: If I could have a moment to explain it to him?

> THE COURT: Sure, take your time. You understand that?

> THE DEFENDANT: Yes, I do.

(*Id.* at 13-14.) Both the trial court and counsel had some discussion with Virgen regarding the admissibility of his prior convictions if he testified. Therefore, it was not objectively unreasonable for the PCR court to determine that counsel was not ineffective as to this issue.

- 18 -

1

2

## CERTIFICATE OF APPEALABILITY

3         Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court

4    must issue or deny a certificate of appealability (COA) at the time it issues a final order

5    adverse to the applicant. A COA may issue only when the petitioner "has made a

6    substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This

7    showing can be established by demonstrating that "reasonable jurists could debate

8    whether (or, for that matter, agree that) the petition should have been resolved in a

9    different manner" or that the issues were "adequate to deserve encouragement to proceed

10

11   further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463

12   U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable

13   jurists could debate (1) whether the petition states a valid claim of the denial of a

14

15   constitutional right, and (2) whether the court's procedural ruling was correct. *Id.* The

16   Court finds that reasonable jurists would not find this Court's procedural rulings

17   debatable nor could they debate that the merits of any claim should have been resolved

18

19   differently. Therefore, a COA will not issue.

20

21         Accordingly,

22         **IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DISMISSED**.

23         **IT IS FURTHER ORDERED** that the Clerk of Court should enter judgment and

24

25   close this case.

26

27

28

- 19 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IT IS FURTHER ORDERED** that, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a certificate of appealability.

Dated this 3rd day of October, 2014.

D. Thomas Ferraro
United States Magistrate Judge

- 20 -